UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

**FILED**

JUL 20 2007



\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | | |
|---|---|---|
| RAMON GUEL, Jr., | \* | CIV 07-4069 |
| Petitioner, | \* | |
| -vs- | \* | MEMORANDUM OPINION AND ORDER DENYING PETITION |
| WARDEN WHITEHEAD, Warden, Federal Prison Camp, | \* | |
| Respondent. | \* | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Ramon Guel, an inmate at the Federal Prison Camp ("FPC") in Yankton, South Dakota, petitions this Court for a writ of habeas corpus under 28 U.S.C. § 2241. For the reasons discussed below, the writ will be denied.

## BACKGROUND

On August 20, 1998, Petitioner was sentenced in the United States District Court for the Northern District of Iowa to 120 months of imprisonment followed by three years of supervised release for Accessory After the Fact to Possession with Intent to Distribute Amphetamine. Records submitted by the Bureau of Prisons ("BOP") indicate that during his intake screening on September 3, 1998 at the Oxford, Wisconsin prison, Petitioner reported a history of alcohol abuse and expressed an interest in drug abuse treatment. The following year Petitioner underwent an intake screening at the Greenville, Illinois prison on September 24, 1999. He reported a history of substance abuse. Petitioner asked to participate in a drug abuse program and he was advised to submit an inmate request to the drug treatment staff. BOP records show that, on October 1, 1999, Petitioner submitted a request "to be considered for the Residential Values Program" but there is no showing that Petitioner submitted a request to participate in the Residential Drug Abuse Program ("RDAP") at

that time. He was accepted into the Residential Values Program, and he graduated from that program on June 14, 2000.

A Psychology Data Service (PDS) entry dated October 25, 2001, shows Petitioner asked to participate in the RDAP:

> You requested consideration for participation in a 500-hour Residential Drug Abuse Program (RDAP). One of the requirements for eligibility consideration of the RDAP is length of remaining sentence to serve. Policy Statement 5330.10 (CN-03) Chapter 5.4.1(4) states, "Ordinarily, the inmate must be within thirty-six months of release. Inmates are selected for admission to residential programs based upon the time remaining on their sentence." Currently, you have more than thirty-six months remaining to serve. Your PRD is 06-07-2009. However, you may reapply in writing for the RDAP when you are within thirty-six months of your projected release date (June, 2006). Based on current information, you do not meet the minimum requirements for enrollment in a Residential Drug Abuse Program at this time. If you have not already done so, you may want to consider participation in the Drug Education class, non-residential drug treatment, and/or the AA/NA Program.

An intake screening dated July 30, 2004 from the prison in Rochester, Minnesota, indicates that Petitioner reported marijuana as his primary drug of addiction, but that he was not interested in drug abuse treatment at that time. Later in 2004, Petitioner again requested participation in the RDAP. An entry in the BOP records dated December 22, 2004, states:

> Guel has once again requested inclusion in RDAP, even though he is listed as DAP UNQUAL. His PSI was reviewed; it indicates no problematic use of substances in the year prior to his arrest. He has tried, without success, to get his PSI amended. Guel was encouraged to think of other credible indicators he may have used substances in the year prior to his arrest, such as participation in treatment programs or hospitalization for substance-related illnesses. If he is able to think of some records that may be requested to help staff make a diagnosis of substance abuse or dependence, he will contact this writer for further assistance. He was encouraged to participate in the NRDAP.

NRDAP is the Non-Residential Drug Abuse Program available to all inmates. Unlike the RDAP, participation in the NRDAP does not involve a possible sentence reduction.

Again, on September 16, 2006, during an intake screening at the prison in Duluth, Minnesota, Petitioner stated an interest in the RDAP. The psychologist conducting the screening noted that there was no documented history of substance abuse, and she encouraged him to look for information to support his claimed substance abuse.

On November 15, 2006, Petitioner was interviewed by the Drug Abuse Program ("DAP") Coordinator in Duluth to determine his RDAP eligibility. It appears that at some time between September 16, 2006 and November 15, 2006, Petitioner provided supplemental documentation substantiating a substance abuse problem. The November 15, 2006, entry states that the DAP Coordinator had previously asked Petitioner to look for collateral information, and the supplemental documentation was provided and available to the DAP Coordinator at the time.[1] The documentation, along with four interviews by the DAP Coordinator, a psychologist, resulted in a diagnosis of substance abuse dependence and Petitioner was deemed qualified to participate in the RDAP. Once that determination was made, BOP staff reviewed Petitioner's file to see if he was eligible for the early release incentive following successful completion of the program. On November 28, 2006, Petitioner was found ineligible for early release because his drug offense included a two-point enhancement for possession of a weapon, specifically brass knuckles. By way of an RDAP Notice to Inmate form, Petitioner was notified that he was ineligible for early release.

On February 14, 2007, while still in the Duluth prison, Petitioner signed an Agreement to Participate in the RDAP. Because the Duluth prison does not have an RDAP, Petitioner was transferred to Yankton where the program is available.

Petitioner filed this § 2241 on May 15, 2007, requesting an injunction requiring the BOP to place him in the RDAP class scheduled to begin on May 27, 2007. He asked for an expedited ruling on his motion for a preliminary injunction because he claimed that if he did not begin the program

---

[1] "The collateral information contained in the file includes documents from a 1991 conviction for assault which indicate that petitioner Guel was drunk at the time of the assault." (Doc. 20, Declaration of Dr. Pierce at ¶ 24.)

3

immediately he would not be eligible for the entire 12 month sentence reduction allowed by statute. The motion for preliminary injunction was denied by a Memorandum Opinion and Order issued on May 25, 2007. (Doc. 8.) Subsequently, Petitioner filed another motion for a preliminary injunction, along with a motion for a hearing and a motion for appointment of counsel. (Docs. 11, 13 and 21.) Respondent's response to the petition indicates that Petitioner is likely to start in one of the next two RDAP classes, and that he is not eligible for early release upon completion of the program.

The BOP has a three-level administrative remedy process which must be exhausted before an inmate can bring an action in federal court. *See* 28 C.F.R. § 542 et seq. Although Respondent has addressed the merits of Petitioner's arguments, Respondent contends that Petitioner has not filed administrative remedy requests at all three levels and, therefore, he has not exhausted his administrative remedies. The Court finds that exhaustion would be futile in this case. Petitioner is scheduled to begin an RDAP class soon and his anticipated projected release date is June 7, 2009. If he were required to exhaust his administrative remedies, it might be too late for him to benefit from early release if found to be warranted. The Court will excuse Petitioner's failure to exhaust and will address the merits of his claims.

## DISCUSSION

Petitioner claims that he should have been accepted into the RDAP in 1998 and that, under the regulations in effect at that time, he would have been eligible for early release. In order to address Petitioner's argument, the Court must analyze the relevant statute and regulations.

Congress authorized the BOP, pursuant to 18 U.S.C.A. § 3621(e)(2)(B), to grant sentence reductions of up to one year for those convicted of a nonviolent offense who successfully complete the 500-hour RDAP. The statute provides:

> The period a prisoner convicted of a nonviolent offense remains in custody after successfully completing a treatment program may be reduced by the Bureau of Prisons, but such reduction may not be more than one year from the term the prisoner must otherwise serve.

18 U.S.C.A. § 3621(e)(2)(B). To interpret the statute, the BOP issued regulations in May 1995 defining "nonviolent offense" as the converse of a crime of violence. *See* 28 C.F.R. § 550.58 (1995). This 1995 regulation excluded from eligibility for early release inmates whose "current offense is determined to be a crime of violence as defined in 18 U.S.C. § 924(c)(3)." 28 C.F.R. § 550.58 (1995). Section 924(c)(3) defines a crime of violence as an offense that is a felony and that either "has as an element the use, attempted use, or threatened use of physical force against the person or property of another" or "by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense."

To implement this regulation, the BOP adopted Program Statement 5162.02. Under that program statement, an inmate who had two levels added to his offense level for possession of a firearm or other dangerous weapon was automatically classified as ineligible for early release, and his crime was regarded by the BOP as a crime of violence. In *Martin v. Gerlinski*, 133 F.3d 1076 (8th Cir. 1998), the Eighth Circuit ruled that the BOP exceeded its authority by considering the firearm enhancement in determining a prisoner's eligibility for early release under 18 U.S.C. § 3621(e)(2)(B). The Court stated that the BOP has discretion to determine which offenses will be eligible for consideration, but the BOP cannot "disregard the plain language of the statute which speaks only to those 'convicted' of a nonviolent offense." *Id.* at 1080.

Prior to the Eighth Circuit's decision in *Martin*, on October 9, 1997, the BOP adopted an interim regulation and a program statement defining eligibility for the RDAP and early release.[2] The interim regulation, 28 C.F.R. § 550.58, deleted the reference to § 924(c)(3) and its definition of crimes of violence. The 1997 interim regulation, like the 1995 regulation, made ineligible for early release those prisoners who had a two-point sentence enhancement for weapon possession. The difference was that the 1997 regulation did not define the statutory terms "nonviolent offense" or "crime of violence," but instead relied on "the discretion allotted to the Director or the Bureau of

---

[2] The final version of the regulation was adopted without change on December 22, 2000. *See* 65 Fed.Reg. 80,745 (2000).

Prisons in granting a sentence reduction to exclude [enumerated categories of] inmates." The BOP program statements also were amended on October 9, 1997, to reflect this change. Under the new program statement, a prisoner, such as Petitioner, who received a two-point enhancement for possession of a dangerous weapon during a drug crime, is ineligible for early release based on the BOP Director's discretion. *See* Program Statement 5162.05. The Eight Circuit upheld the validity of the 1997 regulation and the Program Statement in *Bellis v. Davis*, 186 F.3d 1092 (8th Cir.1999), *aff'd sub nom. Lopez v. Davis*, 531 U.S. 230 (2001). When the Supreme Court upheld the regulation, it stated that nothing in 18 U.S.C. § 3621(e)(2)(B) prohibits "categorical exclusions" from the early release incentive. *See Lopez v. Davis*, 531 U.S. 230, 243 (2001).

*Paulsen v. Daniels*, 413 F.3d 999 (9th Cir. 2005), relied on by Petitioner in support of his argument that he should have been admitted to the RDAP in 1998 and deemed eligible for early release at that time, involved § 2241 petitions brought by sixteen prisoners or former prisoners who, between December 1997 and October 2000, were informed that they were eligible to participate in the RDAP but that, because their offenses involved the carrying, possession, or use of firearms, they were not eligible for early release under the BOP's 1997 interim regulation. Finding that the BOP violated the Administrative Procedures Act in its promulgation of the 1997 interim regulation, the Ninth Circuit held the 1997 interim regulation invalid. The Court stated that "[t]he effect of invalidating an agency rule is to reinstate the rule previously in force." Like the Eighth Circuit in *Martin*, the Ninth Circuit had held in an earlier case that the rule previously in force, the 1995 regulation, had erroneously interpreted 18 U.S.C. § 3621(e)(2)(B), so the Court in *Paulsen* held that the final version of the regulation that was adopted without change on December 22, 2000 was the applicable rule. Noting that the final rule adopted on December 22, 2000 could only have prospective effect, the Ninth Circuit affirmed the district court's decision to grant habeas relief to the sixteen petitioners.[3]

---

[3] The relief requested by the petitioners was to be deemed eligible for early release for participating in the RDAP.

6

Petitioner claims that he is in the same position and is entitled to the same relief as the sixteen petitioners in *Paulsen*. That is not the case. Although he did express some interest in drug treatment, the record before the Court does not contain any evidence that Petitioner formally requested participation in the RDAP until October 2001. That request was denied because he had more than thirty-six months remaining on his sentence. He was told to reapply when he was within thirty-six months of his projected release date of June 7, 2009. It was not until November 15, 2006, that Petitioner was first determined to be eligible to participate in the RDAP because he had provided some documentation to support his self-reported substance abuse which allowed the psychologist to make the diagnosis necessary for entrance into the program. Then, on November 28, 2006, Petitioner was found ineligible for early release because his drug offense included a two-point enhancement for possession of a weapon. Petitioner does not dispute any of these facts.

Petitioner does not challenge the fact that he is ineligible for early release under the valid, final regulations which were in place in 2006 and which remain in place today, the regulations approved by the Supreme Court in *Lopez v. Davis*. The Eighth Circuit has affirmed application of the BOP's early release regulations which are in effect at the time a prisoner enters or completes the RDAP. *See Grove v. Federal Bureau of Prisons*, 245 F.3d 743 (8th Cir. 2001). The § 2241 petitioner in *Grove* challenged the BOP's decision that he was ineligible for early release because he received a two-level enhancement for possession of a firearm. Grove's case was pending before the Eighth Circuit when that Court issued its decision in *Martin* finding that the BOP had improperly defined the term "nonviolent offense" for purposes of the early release incentive. Grove's case was remanded to the district court, which in turn remanded to the BOP, for reconsideration in light of *Martin*. On remand, the BOP at first found Grove eligible for early release. Shortly thereafter, the BOP withdrew that decision, finding that he was subject to the 1997 interim regulations because he was not yet enrolled in the RDAP when the 1997 interim regulations were adopted. Grove was not eligible for early release under the interim regulations because the director's discretion provision allowed the BOP to consider his firearms sentencing enhancement. Grove filed another § 2241 challenging the BOP's determination that he was ineligible for early release under the 1997 interim regulations. The district court granted the writ, holding that the *Martin* case did not allow the BOP

to consider the sentencing enhancement. The Eighth Circuit reversed, holding that the BOP properly applied its 1997 interim regulations to Grove because he had not entered or completed the RDAP by October 9, 1997, the effective date of the interim regulations.

In this case, Petitioner has been deemed ineligible for early release under the final, valid BOP regulation. Petitioner does not challenge the validity of this final regulation, and there is no basis to conclude that the BOP's determination of ineligibility is erroneous. As stated by the Supreme Court, "When an eligible prisoner successfully completes drug treatment, the Bureau thus has the authority, but not the duty, both to alter the prisoner's conditions of confinement and to reduce his term of imprisonment." *Lopez*, 531 U.S. at 241. For these reasons, Petitioner's § 2241 will be denied. Accordingly,

IT IS ORDERED:

(1) That the petition for writ of habeas corpus under 28 U.S.C. § 2241 is denied.

(2) The motion for a preliminary injunction, motion for a hearing and motion for appointment of counsel are denied. (Docs. 11, 13 and 21.)

Dated this 20th day of July, 2007.

BY THE COURT:

Lawrence L. Piersol
United States District Judge

ATTEST:
JOSEPH HAAS, CLERK
BY: Sharon Toure
(SEAL)   DEPUTY